**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

In re:   SHERI O. JANOSIK,                          Case No. 22-31913-KRH
                        Debtor.                     Chapter 13

_____

SAMUEL A BRABSON,

                        Plaintiff,

v.                                                  Adv. Pro. No. 22-03118-KRH

SHERI O. JANOSIK,

                        Defendant.

_____

## <u>**MEMORANDUM OPINION**</u>

This matter comes before the Court on the cross-motions for summary judgment filed by

Samuel A. Brabson (the "Plaintiff") and Sheri O. Janosik (the "Defendant," and together with the

Plaintiff, the "Parties").   On July 15, 2022, the Defendant commenced the above-captioned

underlying bankruptcy (the "Bankruptcy Case") by filing a voluntary petition for relief under

Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code").   On October 14, 2022,

the Plaintiff filed a three-count *Complaint* [ECF No. 1] (the "Complaint") in the above-captioned

adversary proceeding (this "Adversary Proceeding").   Count I of the Complaint asked this Court

to find that the sums awarded in a judgment entered by the Chesterfield County Circuit Court (the

"State Court") in Case No. CL20-3068 (the "State Court Action") were nondischargeable under

section 523(a)(4) of the Bankruptcy Code.   Counts II and III of the Complaint asked this Court to

find that the Defendant was not entitled to a discharge under section 727 of the Bankruptcy Code.

The Defendant timely responded with an *Answer* [ECF No. 6] (the "Answer") on November 16,

2022.

On May 3, 2023, the Parties filed *Plaintiff's Motion for Summary Judgment* [ECF No. 9] (the "Plaintiff's Motion"), *Plaintiff's Memorandum in Support of Summary Judgment* [ECF No. 11], *Defendant's Motion for Summary Judgment* [ECF No. 12] (the "Defendant's Motion," together with the Plaintiff's Motion, the "Cross-Motions for Summary Judgment"), and the *Memorandum of Law in Support of Defendant's Motion for Summary Judgment* [ECF No. 13]. The Plaintiff's Motion sought summary judgment as to Count I of the Complaint only. The Defendant's Motion sought summary judgment on all three counts. On May 17, 2023, the Parties filed *Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Memorandum in Support* [ECF No. 14] and *Defendant's Response to Plaintiff's Motion for Summary Judgment* [ECF No. 16]. On May 24, 2023, the Parties each filed reply briefs in support of their respective Cross-Motions for Summary Judgment. *See* Pl.'s Reply to Def.'s Opp'n to Mot. for Summ. J. & Mem. in Supp., ECF No. 17; Reply Brief in Support of Def.'s Mot. for Summ. J., ECF No. 18. The Court held a hearing (the "Hearing") on the Cross-Motions for Summary Judgment on June 5, 2023.

The Court has subject matter jurisdiction over this Adversary Proceeding under 28 U.S.C. § 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), (J). Venue is appropriate pursuant to 28 U.S.C. § 1409(a). For the reasons set forth below and stated on the record at the Hearing, the Court will enter summary judgment in favor of the Plaintiff as to Count I and will grant summary judgment in favor of the Defendant as to Count II and Count III.

## Background

The State Court found that the Defendant was liable to the Plaintiff for breach of fiduciary duty, for breach of a trust agreement, for conversion, and for fraud for her misappropriation of funds held in a special needs trust dated February 18, 2016 (the "Trust") of which she was the trustee and the Plaintiff was the beneficiary.  The Parties engaged in extensive litigation throughout the State Court Action.[1]   The Defendant and her counsel appeared at a pre-trial conference on February 8, 2021, at which the State Court referred the State Court Action to a Commissioner in Chancery (the "Commissioner") for purposes of conducting an evidentiary hearing (the "Evidentiary Hearing").  Stipulation ¶ 3, ECF No. 33 at 1.  Prior to the Evidentiary Hearing, the Parties engaged in discovery and participated in an unsuccessful settlement conference.  *Id*. ¶ 4, ECF No. 33 at 1.  The Commissioner, with the Parties in attendance, conducted the Evidentiary Hearing on January 12, 2022.  *Id*. ¶ 5, ECF No. 33 at 1.

The Commissioner filed his report (the "Commissioner's Report") with the State Court on February 21, 2022.  *Id*. ¶ 6, ECF No. 33 at 2.  The Commissioner's Report found that the Parties were bound by the terms of the Trust and the Defendant owed the Plaintiff a fiduciary duty to manage and spend Trust funds for the benefit of the Plaintiff.  Comm'r's Report ¶¶ 3, 4, ECF No. 1-3 at 5.  The Commissioner's Report then made factual findings regarding the propriety of a litany of expenditures made by the Defendant with funds held in trust for the Plaintiff.    The Commissioner found that some of the expenditures violated the Defendant's fiduciary duty to the Plaintiff and others did not.  *Id.*, ECF No. 1-3 at 5-7.  The Commissioner likewise found that those transactions that were in violation of the Defendant's fiduciary duty constituted a breach of the

---

[1]    The Plaintiff commenced the State Court Action on October 5, 2020, by filing a complaint against the Defendant in the State Court.  Stipulation of Uncontroverted Facts [hereinafter Stipulation] ¶ 1, ECF No. 33 at 1.  The Defendant filed an answer thereto on or about November 4, 2020.  *Id*. ¶ 2, ECF No. 33 at 1.

fiduciary duty that the Defendant owed to the Plaintiff as well as a breach of the trust agreement
and conversion. *Id.* ¶¶ 5-6, ECF No. 1-3 at 7.  With regard to fraud, the Commissioner found:

> [T]he Defendant, for the most part, believed that because she had
> sole access to the Trust funds, she was acting in accordance with
> what she thought the parties had agreed to and she was allowed to
> do so.  It appears that the Plaintiff was often involved in decisions
> concerning the spending of Trust funds and other times he was
> content to let the Defendant make these decisions.  Notwithstanding,
> the Defendant obviously knew that her vehicle purchase after their
> relationship ended and her failure to send the remaining funds in the
> Trust account to the Plaintiff as promised after their relationship
> ended was fraudulent on her part, with her using and retaining funds
> to which she was clearly not entitled.

*Id.* ¶ 7, ECF No. 1-3 at 8.  The Commissioner then found that the Plaintiff had been damaged in

the sum of $165,927.58 based upon the funds the Defendant improperly transferred for her own

benefit.  *Id.* ¶ 8, ECF No. 1-3 at 8.  The Commissioner did not award damages for the remaining

transfers.  *See id.* ¶ 4, ECF No. 1-3 at 7.

The Defendant objected to the Commissioner's Report on March 2, 2022, and to the

Plaintiff's request for attorneys' fees and costs on May 16, 2022.  Stipulation ¶ 7, ECF No. 33 at

2.  The Parties appeared before the Honorable Edward Robbins, Jr. of the Chesterfield County

Circuit Court on May 25, 2022, for argument on the Defendant's objections (the "State Court

Hearing").  Stipulation ¶ 8, ECF No. 33 at 2.  At the State Court Hearing, Judge Robbins ruled:

> The Court's independent review of that evidence finds, as the
> Commissioner did, that the Defendant reserved to herself
> approximately $166,000 of the Plaintiff's money.  The remaining
> funds may or may not have been for the benefit of the Plaintiff, but
> the $166,000 was just all greed.  There's no explanation other than
> somebody took something that did not belong to them, and they
> knew it.

Pl.'s Ex. 16 at 3:24-4:5, ECF No. 29 at 52-53.  The State Court also held that "$166,000 of money

that belonged to one person was taken by the other to be used for her purposes.  We call that

stealing."  Pl.'s Ex. 16 at 4:15-17, ECF No. 29 at 53.  Finally, the State Court found

> [T]he only way, at least from the evidence the Court has seen, that
> the Plaintiff was able to recover anything was by bringing this
> lawsuit.  She promis[ ]ed to pay back the money and didn't pay any
> of it.  He had no choice.  This was it.  The Commissioner's report
> runs some 800 pages.  The exhibits are voluminous, line by line, bit
> by bit.  This conduct is in the Court's view just egregious and
> indefensible, and to require someone to bear the brunt of recovering
> that which was wrongfully taken from them in this way over this
> period of time in this amount after other matters, other efforts were
> made to obtain an accounting and a repayment have failed.  The cost
> of that needs to be borne by someone.
>
> And under the law the question is whether it should be borne by the
> Plaintiff under the long-standing American rule of you pay your own
> way, or whether it should be borne by the thief who took the money
> over periods of time and now complains that the cost of having to
> go through this procedure is too great.

Pl.'s Ex. 16 at 4:21-5:14. ECF No. 29 at 53-54.  The State Court relied upon these findings to

award attorneys' fees and costs to the Plaintiff.

The State Court entered the judgment against the Defendant on July 13, 2022.  State Ct. J.,

ECF No. 1-2 at 4.  The Parties do not dispute that the judgment entered by the State Court

incorporates the Commissioner's Report.  Compl. ¶ 28, ECF No. 1 at 5; Answer ¶ 28, ECF No. 6

at 4.  The State Court also incorporated the bench rulings it made at the State Court Hearing into

its judgment.  State Ct. J., ECF No. 1-2 at 2; Stipulation ¶ 8, ECF No. 33 at 2.  The State Court

independently found that the Defendant owed the Plaintiff a fiduciary duty to manage the Trust

and spend trust funds for the benefit of the Plaintiff, that the Defendant breached that duty, and

that the Defendant converted Trust funds for her personal benefit.  State Ct. J., ECF No. 1-2 at 2.

The State Court held the Defendant liable for compensatory damages in the amount of

$165,927.58, for costs in the amount of $4,160.14,[2] for attorneys' fees in the amount of $57,450,

and for post-judgment interest at the judgment rate (the "State Court Judgment").  *Id.* ¶ A-E, ECF

No. 1-2 at 4.  This liability is the subject of this Adversary Proceeding.

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this Adversary

Proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary

judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and

any affidavits show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (citing

Fed. R. Civ. P. 56(c)).  In determining whether this showing has been made, the Court must assess

the evidence in the light most favorable to the party opposing the motion.  *See, e.g., Charbonnages*

*de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).  The United States Supreme Court has made

clear that summary judgment is not a disfavored procedural shortcut, but rather an integral part of

the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination

of every action."  *Celotex Corp.,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1); s*ee also Thompson*

*Everett, Inc. v. Nat'l Cable Advert., L.P.*, 57 F.3d 1317, 1322-23 (4th Cir. 1995); *Schultz v. Wills*

(*In re Wills*), 126 B.R. 489, 494 (Bankr. E.D. Va. 1991) (citations omitted).

Summary judgment is appropriate only where there are no "disputes over facts that might

affect the outcome of the suit;" disputes over mere peripheral or irrelevant facts are not sufficient.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A party moving for summary judgment

bears the initial burden of demonstrating that there is no genuine issue of material fact.  *See Celotex*

*Corp.,* 477 U.S. at 322.  If the moving party demonstrates that there is no genuine issue of material

---

[2]     The Plaintiff had previously paid $2,000.00 of this amount to cover the costs of the Commissioner.

fact, the burden shifts to the nonmoving party to produce evidence to demonstrate that there is indeed a genuine issue for trial. *Id.* at 325; *see also RGI, Inc. v. Unified Indus., Inc.*, 963 F.2d 658, 661 (4th Cir. 1992).

## Analysis

By their Cross-Motions for Summary Judgment, the Parties agree that Count I is ripe for summary judgment based on the doctrine of collateral estoppel. Each of the parties asks the Court to rely on the preclusive effect of the State Court Judgment to resolve Count I in their favor. The Defendant's Motion also seeks summary judgment as to Count II and Count III on the grounds that section 727 of the Bankruptcy Code does not apply to this Bankruptcy Case. The Court will first address Count I before turning its attention to Count II and Count III.

I.    Nondischargeability Under Section 523(a)(4)

Count I of the Complaint seeks a determination that the amounts awarded under the State Court Judgment are nondischargeable under section 524(a)(4) of the Bankruptcy Code.[3] Collateral estoppel principles apply in dischargeability actions. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). In order to rule in favor of either party on the Cross-Motions for Summary Judgment, this

---

[3] "The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007) (quoting *Grogan*, 498 U.S. at 286 (1991)). Section 523 of the Bankruptcy Code contains several exceptions to an individual debtor's ability to obtain a discharge of certain debts. *See* 11 U.S.C. § 523; *Nunnery v. Rountree* (*In re Rountree*), 478 F.3d 215, 219 (4th Cir. 2007). "Congress evidently concluded that the creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start." *Grogan*, 498 U.S. at 287. Generally, "[n]ondischargeability [is] a question of federal law independent of the issue of the validity of the underlying claim. *Id.* at 289. "Thus, the bankruptcy court has exclusive jurisdiction to make the legal conclusion as to whether a debt is dischargeable." *D'Agostino v. Genovese* (*In re Genovese*), No. 95-1984, 1996 U.S. App. LEXIS 24046, at *3, 1996 WL 516160, at *1 (4th Cir. Sep. 12, 1996) (per curiam) (citing *Grogan*, 498 U.S. at 289). However, the doctrine of collateral estoppel may prevent the bankruptcy court from relitigating issues of fact previously decided in a state court. *See Grogan*, 498 U.S. at 284; *Hagan v. McNallen* (*In re McNallen*), 62 F.3d 619, 624 (4th Cir.1995). "[D]espite the bankruptcy court's exclusive jurisdiction to determine dischargeability, . . . the Fourth Circuit bars factual findings in state court from being relitigated in federal bankruptcy proceedings where the requirements of collateral estoppel are met." *In re Genovese*, 1996 U.S. App. LEXIS 24046, at *5-6, 1996 WL 516160, at *2 (first citing *Grogan*, 498 U.S. at 284-85 & n.11; then citing *Combs v. Richardson*, 838 F.2d 112, 114-16 (4th Cir. 1988); then citing *In re Raynor*, 922 F.2d 1146, 1148-49 (4th Cir. 1991)).

Court needs to be able to find as a matter of law whether the Defendant's liability under the State

Court Judgment was "for fraud or defalcation while acting in a fiduciary capacity, embezzlement,

or larceny." 11 U.S.C. § 523(a)(4). While the parties disagree on the resolution, the Cross-

Motions for Summary Judgment each assert that the State Court Judgment is determinative as to

whether section 523(a)(4) should apply.

When applying collateral estoppel to prior state court judgments, "a federal court must

give to a state-court judgment the same preclusive effect as would be given that judgment under

the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of

Educ.*, 465 U.S. 75, 81 (1984). As the State Court Judgment was issued under Virginia law,

Virginia preclusion law must be applied here. *See id.*; *see also Heckert v. Dotson* (*In re Heckert*),

272 F.3d 253, 257-58 (4th Cir. 2001) (applying this principle in the dischargeability context). In

Virginia, for collateral estoppel to apply:

> (1) the parties to the two proceedings must be the same; (2) the
> factual issue sought to be litigated must have been actually litigated
> in the prior proceeding; (3) the factual issue must have been essential
> to the judgment rendered in the prior proceeding; and (4) the prior
> proceeding must have resulted in a valid, final judgment against the
> party to whom the doctrine is sought to be applied.

*Whitley v. Commonwealth*, 260 Va. 482, 489, 538 S.E.2d 296, 299 (2000) (first citing *Glasco v.

Ballard*, 249 Va. 61, 64, 452 S.E.2d 854, 855 (1995); then citing *Bates v. Devers*, 214 Va. 667,

671, 202 S.E.2d 917, 921 (1974)). By their Cross-Motions for Summary Judgment, the Parties

agree that the State Court Judgment is entitled to preclusive effect. The Court finds that the Parties

in the State Court Action and the Adversary Proceeding are the same. *See id.* The findings made

by the State Court were actually litigated, as evidenced by the Evidentiary Hearing, the

Defendant's objection to the Commissioner's Report and the Plaintiff's request for attorneys' fees,

and the State Court Hearing. *See id.* The State Court Judgment is a valid, final judgment. *See id.*

The issues remaining for this Court are (i) determining whether the factual findings made by the State Court either establish or negate nondischargeability under section 523(a)(4) and (ii) whether those factual findings were essential to the State Court Judgment.

This Court finds that the State Court Judgment is premised upon factual findings of "fraud or defalcation while acting in a fiduciary capacity," *see* 11 U.S.C. § 523(a)(4), so that the State Court Judgment is entitled to preclusive effect.  "To prevail on a claim under § 523(a)(4), a creditor must prove both that 'the debt arose while the debtor was acting in a fiduciary capacity[,] and . . . that the debt arose from the debtor's fraud or defalcation.'"  *Com. Cash Flow, L.L.C. v. Matkins* (*In re Matkins*), 605 B.R. 62, 99 (Bankr. E.D. Va. 2019) (alterations in original) (quoting *Kubota Tractor Corp. v. Strack* (*In re Strack*), 524 F.3d 493, 497 (4th Cir. 2008)).

The first prong is satisfied here.  The State Court determined that "the Defendant owed the Plaintiff a fiduciary duty to manage the Trust" and that the liability associated with the State Court Judgment arose while the Defendant was acting in her fiduciary capacity.  State Ct. J., ECF No. 1-2 at 2; Comm'r's Report ¶ 3, 4, ECF No. 1-3 at 5.  This Court must find if the second prong is satisfied: whether the State Court determined that the debt arose from the Defendant's fraud or defalcation.

Defalcation includes "financial wrongdoing involving a breach of trust," *Defalcation*, *Black's Law Dictionary* (11th ed. 2019), coupled with scienter, *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273-75 (2013); *see also Dixon v. Wilkerson* (*In re Wilkerson*), 644 B.R. 349, 367 (Bankr. E.D. Va. 2022).  "[W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, 'defalcation' requires an intentional wrong."  *Bullock*, 569 U.S. at 273.  An intentional wrong "include[s] . . . not only conduct that the fiduciary knows is improper but also reckless conduct of the kind . . . [where] the fiduciary 'consciously disregards' (or is willfully

blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Bullock*, 569 U.S. at 273–74; *see also Cincinnati Ins. Co. v. Chidester* (*In re Chidester*), 524 B.R. 656, 661 (Bankr. W.D. Va. 2015) ("[I]f the debtor does not intentionally or knowingly commit a wrongful act resulting in the violation of the fiduciary duty, the court must at least find that the debtor 'consciously disregard[ed] a substantial and unjustifiable risk' that the actions could result in such a violation." (quoting Model Penal Code § 2.02(2)(c))).

In the case at bar, this Court need not determine whether the Defendant engaged in reckless behavior because the State Court Judgment provides that the Defendant was engaged in both "bad faith, moral turpitude, or other immoral conduct." As this phrase has been subsequently interpreted by case law, such conduct constitutes an "intentional wrong."

In *CACI, Inc. v. Ngo* (*In re Ngo*), during extensive pre-petition arbitration proceedings, the arbitrator determined that the debtor had misappropriated her former employer's trade secrets. Adv. Pro. No. 21-01011-BFK, 2021 Bankr. LEXIS 1773, at *4-7, 2021 WL 2787601, at *2-3 (Bankr. E.D. Va. July 2, 2021), *appeal denied, judgment aff'd*, No. 1:21-CV-01025, 2022 U.S. Dist. LEXIS 88174, 2022 WL 1504873 (E.D. Va. Feb. 14, 2022), *aff'd*, No. 22-1535, 2022 U.S. App. LEXIS 35455, 2022 WL 17848948 (4th Cir. Dec. 22, 2022). The bankruptcy court determined that the arbitrator's findings that the debtor had "acquired the information at issue by 'improper means' . . . [and] violated duties of loyalty imposed upon an employee in the employment relationship" were entitled to collateral estoppel effect. *Id.* at *25, 2021 WL 2787601 at *10. Moreover, the bankruptcy court determined that these factual findings alone satisfied the *Bullock* standard for "bad faith, moral turpitude, or other immoral conduct," such that the arbitrator's award was deemed non-dischargeable pursuant to section 523(a)(4). *Id.* at *24-25, 2021 WL 2787601, at *10.

Similarly, in the case at bar, the State Court found, inter alia, that the Defendant committed a financial wrongdoing. "[A]t the end of the day $166,000 of money that belonged to one person was taken by the other person to be used for her purposes. We call that stealing." Pl. Ex. 16 at 4:15-17, ECF No. 29 at 53; *see also* State Ct. J., ECF No. 1-2 at 2 (finding that the Defendant converted trust funds for her personal benefit); Comm'r's Report ¶ 4, ECF No. 1-3 at 5-7 (evaluating transactions made by the Defendant). The State Court found that the Defendant owed a fiduciary duty to the Plaintiff and that the Defendant breached that duty through the misappropriation of those funds. State Ct. J., ECF No. 1-2 at 2; *see also* Comm'r's Report ¶ 4, ECF No. 1-3 at 5-7 (finding the same). Additionally, the State Court found that the "Defendant committed fraud." State Ct. J., ECF No. 1-2 at 1-2. Under the rationale of *In re Ngo*, these findings constitute "bad faith, moral turpitude, or other immoral conduct," as used in *Bullock* and are entitled to preclusive effect. *See* 2021 Bankr. LEXIS 1773, at *24-25, 2021 WL 2787601, at *10.

Alternatively, the State Court found that the Defendant had committed an intentional wrong. The State Court found that the Defendant committed a financial wrongdoing by "reserv[ing] to herself approximately $166,000 . . . that did not belong to [her]." Pl. Ex. 16 at 3:24-4:1, ECF No. 29 at 52-53. Not only did the Defendant commit a wrong, but the State Court also specifically found that the Defendant knowingly committed a wrongful act, finding "the $166,000 just all greed. There's no explanation other than somebody took something that did not belong to them *and they knew it*." *Id.* at 4:3-5, ECF No. 29 at 53 (emphasis added). Similarly, the Commissioner specifically determined that the Defendant had knowingly and fraudulently spent Trust funds to which she was not entitled.

> Notwithstanding, the Defendant obviously knew that her vehicle purchase after the relationship ended and her failure to send the remaining funds in the Trust account to the Plaintiff as promised

after their relationship ended was fraudulent on her part, with her
using and retaining funds to which she was clearly not entitled.

Comm'r's Report ¶ 7, ECF No. 1-3 at 8.  These factual findings conclusively establish that the

Defendant committed an intentional wrong within the meaning of *Bullock* and, as such, constitute

sufficient preclusive findings for this Court to find that the debt associated with the State Court

Judgment arose by fraud or defalcation in a fiduciary capacity.

In addition to fraud or defalcation in a fiduciary capacity, section 523(a)(4) also excepts

from discharge any debt arising from embezzlement.[4]    11 U.S.C. § 523(a)(4).    To prove

"embezzlement" as used in section 523(a)(4), the Plaintiff must establish that the Defendant

appropriated property for her own benefit with an intent to convert, defraud, or deceive.  *See KMK*

*Factoring, L.L.C. v. McKnew* (*In re McKnew*), 270 B.R. 593, 631-32 (Bankr. E.D. Va. 2001); *see*

*also In re Wilkerson*, 644 B.R. at 371.

The State Court Judgment found that "the Defendant converted Trust funds for her

personal benefit."  State Ct. J., ECF No. 1-2 at 2.  Under Virginia law, "[c]onversion is the

wrongful assumption or exercise of the right of ownership over goods or chattels belonging to

another in denial of or inconsistent with the owner's rights." *Economopoulos v. Kolaitis*, 259 Va.

806, 814, 528 S.E.2d 714, 719 (2000) (citing *Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67,

75, 92 S.E.2d 359, 365 (1956)).  In its ruling, the State Court necessarily found that the Defendant

had appropriated the Trust funds for her benefit, thereby establishing the first element of

embezzlement under section 523(a)(4).  *See In re McKnew*, 270 B.R. at 631.  As discussed above,

the State Court found the Defendant intended to convert the Trust Funds and that intent was

---

[4]    The United States Supreme Court has distinguished embezzlement from defalcation, at least in the context of
section 523(a)(4), by noting embezzlement requires conversion and does not necessarily need to occur in the
context of a fiduciary relationship.  *Bullock*, 569 U.S. at 275.

essential to the judgment.  Pl. Ex. 16 at 4:3-5, ECF No. 29 at 53 ("There's no explanation other

than somebody took something that did not belong to them and they knew it.").  The State Court

Judgment therefore includes sufficient preclusive findings for this Court to find that the debt arose

from embezzlement.  This provides an alternate basis on which the Plaintiff is entitled to summary

judgment on Count I.

Having now determined that the State Court Judgment is entitled to preclusive effect and

that the debt owed by the Defendant to the Plaintiff is nondischargeable under section 523(a)(4),

the Court now must decide what "the debt" created by the State Court Judgment includes.  In

addition to compensatory damages, the State Court also awarded costs, interest, and attorneys'

fees.[5]  "Debt," as used in section 523, "is defined [by] the [Bankruptcy] Code as 'liability on a

claim,' a 'claim' is defined in turn as a 'right to payment,' and a 'right to payment,' . . . 'is nothing

more nor less than an enforceable obligation.'"  *Cohen v. De La Cruz*, 523 U.S. 213, 218 (1998)

(first citing 11 U.S.C. § 101(12); then citing 11 U.S.C. § 101(5A); then citing *Pa. Dep't of Pub.*

*Welfare v. Davenport*, 495 U.S. 552, 559 (1990)).  Accordingly, "debt" as used within section

523(a) encompasses any liability arising from the Defendant's defalcation and embezzlement, *cf.*

*id.* at 219 (rejecting appellant's interpretation of section 523(a)(2)'s narrower language of "to the

---

[5]   The State Court awarded fees and costs under section 64.2-795 of the Virginia Code, State Ct. J., ECF No. 1-2 at
2, which provides "[i]n a judicial proceeding involving the administration of a trust, the court, as justice and
equity may require, may award costs and expenses, including reasonable attorney fees, to any party, to be paid by
another party or from the trust that is the subject of the controversy," Va. Code § 64.2-795.  In its ruling from the
bench, which was incorporated into the State Court Judgment, the State Court awarded fees and costs because the
Plaintiff was required to seek judicial intervention to recover the stolen funds.  Pl. Ex. 16 at 4:21-5:14. ECF No.
29 at 53-54.  The State Court went so far as to say the costs should be borne by the "thief."  *Id.*  This finding was
central to the award under section 64.2-795, because that section only allows fee-shifting if "justice and equity"
require.  The State Court Judgment therefore includes sufficient preclusive findings for this Court to find that the
remaining damages in the State Court Judgment are nondischargeable under Section 523(a)(4).  Much like
*Catercorp, Inc. v. Henicheck* (*In re Henicheck*), 186 B.R. 211, 218 (Bankr. E.D. Va. 1995) (granting summary
judgment on section 523(a)(2) claim based on collateral estoppel effect of Virginia state court judgment), "[t]he
attorneys' fees became part of the judgment in state court.  Therefore, this court should not and will not collaterally
attack the state court's determination that the attorneys' fees were part of [the plaintiff's] actual damages."  *Id.*
(internal citations omitted).

extent obtained by" to otherwise limit the award of damages to compensatory damages and instead interpreting section 523(a)'s use of the word "debt" to prohibit the discharge of any liability arising from the subject debt, including attorneys' fees, costs, and other relief that may exceed the value obtained by the debtor), including the award of attorneys' fees, *Bengtsson v. Yin* (*In re Yin*), 643 B.R. 855, 864 (Bankr. E.D. Va. 2022) (citing *In re Uzaldin*, 418 B.R. 166, 172 (Bankr. E.D. Va. 2009) ("Where the underlying debt is non-dischargeable, so too are the associated awards of attorneys' fees."); *see also Klingman v. Levinson*, 831 F.2d 1292, 1297 (7th Cir. 1987) ("Because [the debtor's] judgment-debt is nondischargeable under § 523(a)(4), the award of attorneys' fees . . . is also nondischargeable.").  The Plaintiff is therefore entitled to summary judgment as to the entirety of Count I.  This Court holds that the State Court Judgment, in its entirety, is nondischargeable pursuant to section 523(a)(4).

II.    <u>Objections to Discharge</u>

Counts II and III of the Complaint are premised solely upon section 727 of the Bankruptcy Code.  Section 727 governs a debtor's entitlement to receive a discharge in a case under Chapter 7 of the Bankruptcy Code.  The underlying Bankruptcy Case is a case pending under Chapter 13 of the Bankruptcy Code.  Section 727 is inapposite.  *Compare* 11 U.S.C. § 727 (discharge in Chapter 7 cases), *with id.* § 1328 (discharge in Chapter 13 cases).  The Plaintiff does not oppose the Defendant's Motion with respect to these two counts.

Summary judgment will be granted in favor of the Plaintiff as to Count I of the Complaint.

Summary judgment will be granted in favor of the Defendant as to Count II and Count III of the

Complaint.

A separate Order shall issue.

DATED:  ___June 8, 2023_____          ___/s/ Kevin R. Huennekens_____
                                                                     UNITED STATES BANKRUPTCY JUDGE

                                                                     Entered on Docket:  _June 8, 2023_____